IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RAYMOND GRAY <u>et al.</u>          *
                                  *
v.                                *     Civil Action No. WMN-13-2270
                                  *
OFFICER SCOTT KERN <u>et al.</u>    *
                                  *
                                  *
    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

**<u>MEMORANDUM</u>**

Plaintiffs Raymond Gray ("Gray"), individually and jointly with his wife, Sheri Gray, have brought this action against Defendants Officer Scott Kern ("Officer Kern"), Officer Efren Edwards ("Officer Edwards"), Major Eric Russell ("Major Russell"), the Baltimore Police Department, Baltimore City Police Commissioner Anthony Batts ("Commissioner Batts"), the Mayor and City Council of Baltimore ("Baltimore City"), Baltimore County Police Department/Baltimore County ("Baltimore County Police Department"), and Baltimore County, Maryland ("Baltimore County").  Plaintiffs' Complaint contains eleven counts and alleges various state law torts, as well as violations of 42 U.S.C. § 1983.

Pending before this Court is a Motion to Dismiss for Failure to State a Claim by Defendants Baltimore Police Department and Commissioner Anthony Batts (collectively referred to as the "Baltimore Police Defendants").  ECF No. 11.  Also

1

pending is a Motion to Dismiss by Defendant Baltimore County
Police Department, ECF No. 20, and a Motion to Dismiss by
Defendant Baltimore City.  ECF No. 23.  Finally, Defendant
Baltimore County filed a Motion for Summary Judgment, ECF No.
24, in response to which Plaintiffs have filed a Motion to Stay.
ECF No. 29.  Upon review of the pleadings, the Court determines
that no hearing is necessary.  Local Rule 105.6.

For the reasons that follow, the Motion to Dismiss filed by
the Baltimore Police Defendants will be granted in part and
denied in part.  Baltimore County Police Department's Motion to
Dismiss will be denied as moot, as Plaintiffs have subsequently
voluntarily dismissed the Baltimore County Police Department as
a Defendant.  See ECF No. 27.  With respect to Defendant
Baltimore City's Motion to Dismiss, that motion will be granted
and the Mayor and City Council of Baltimore will be dismissed.
Lastly, Plaintiffs' Motion to Stay Defendant Baltimore County's
Motion for Summary Judgment will be granted in part and denied
in part, and Defendant Baltimore County's Motion will be granted
in part and stayed in part pending discovery.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a well-publicized shooting incident
that occurred during a police training exercise in Baltimore
County, Maryland.  The Baltimore Police Department, among
others, had been regularly utilizing a facility in Rosewood,

Maryland ("the Rosewood facility") for specialized and recruit training exercises for approximately five years.  The Rosewood facility contained abandoned structures, metal, trash, rusty fixtures, and appliances, and was used by the Baltimore Police Department and the Baltimore County Police Department to, among other things, create real life training situations with the use of simulated firearms.  Although the exercises at the Rosewood facility were intended to include the use of only simulated firearms, Plaintiffs allege that the departments and their officers regularly permitted the use of live weapons in training situations, in contravention of department policies and training manual directives.

Plaintiff Gray, a police officer trainee with the University of Maryland Police force, took part, on February 12, 2013, in a training exercise at the Rosewood facility with members of the Baltimore Police Department.  Among those individuals were Defendants Officer Kern, a Baltimore Police officer with fifteen years of training experience, Major Russell, a veteran commanding officer, and Officer Edwards, a twenty-five year veteran of the Baltimore Police Department specially assigned to the security detail of Defendant

Commissioner Batts, among others (collectively referred to as the "Officer Defendants").[1]

At all times during the training exercise, the Officer Defendants had loaded service weapons in their possession.  At some point during the training exercise, the trainees, including Gray, were instructed to "go behind a window inside of a building at the facility while they were targeted as part of the exercise."  Compl. ¶ 15.  Officer Kern pointed his weapon in the direction of Gray and the other trainees, and "intentionally or negligently fired his service weapon at [Gray's] head."  Compl. ¶ 16.  As a result, Gray sustained serious and debilitating injuries.

Gray, individually and jointly with his wife, filed the present suit in the Circuit Court for Baltimore City, Maryland. Plaintiffs allege the following eleven counts: (1) false imprisonment; (2) violation of Maryland constitutional rights (Articles 19, 24, and 26); (3) battery; (4) assault; (5) intentional infliction of emotional distress; (6) gross negligence; (7) negligence; (8) excessive force under 42 U.S.C. § 1983; (9) deprivation of federal rights under 42 U.S.C. § 1983; (10) failure to train under Monell and 42 U.S.C. § 1983; and (11) loss of consortium.  The Baltimore Police Defendants

---

[1] There are presently no pending motions filed by any of the Officer Defendants.

removed the action to this Court.  Shortly thereafter, the
presently-pending motions were filed.

## II.  __LEGAL STANDARD__

A motion to dismiss under Federal Rule of Civil Procedure
12(b)(6) tests the legal sufficiency of a complaint.  Edwards v.
City of Goldsboro, 178 F.3d 232, 243 (4th Cir. 1999).  To
survive a 12(b)(6) challenge, a complaint need only present
sufficient factual content to render its claims "plausible on
[their] face" and enable the court to "draw the reasonable
inference that the defendant is liable for the misconduct
alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).
Although a complaint need not contain detailed factual
allegations, "a plaintiff's obligation to provide the grounds of
his entitlement to relief requires more than labels and
conclusions, and a formulaic recitation of the elements of a
cause of action will not do."  Bell Atlantic Corp. v. Twombly,
550 U.S. 544, 555 (2007) (quotation marks and citations
omitted).  Rather, "[f]actual allegations must be enough to
raise a right to relief above the speculative level."  Id.

A motion for summary judgment will be granted if the record
before the court "shows that there is no genuine dispute as to
any material fact and the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(a); Celotex Corp. v.
Catrett, 477 U.S. 317, 322-23 (1986).  See also Felty v. Graves-

Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (noting that trial judges have "an affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial" (internal quotation marks omitted)).  A fact is material if it might "affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether there is a genuine issue of material fact, the Court "views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party." Housley v. Holquist, 879 F. Supp. 2d 472, 479 (D. Md. 2011) (citing Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987)).

   III.  **ANALYSIS**

      A. **Motion to Dismiss by Baltimore Police Department and Commissioner Batts**

   Plaintiffs admit that the Complaint must be dismissed to the extent that it seeks to hold the Baltimore Police Department liable under state law.  Specifically, Plaintiffs admit that the Baltimore Police Department is generally considered to be a State agency for purposes of State sovereign immunity.  See Baltimore Police Dept. v. Cherkes, 780 A.2d 410, 422-36 (Md. Ct. Spec. App. 2011).  Accordingly, because "[s]tate sovereign immunity, unlike the immunity of counties, municipalities, and

6

local governmental agencies, is 'total,'" Counts I-VII must be dismissed as to the Baltimore Police Department.[2]  Id. at 424.

### 1. Count VII as to Commissioner Batts

The Baltimore Police Defendants argue that Commissioner Batts is entitled to common law public official immunity as to Plaintiffs' state law negligence claim.[3]  Public official immunity applies where (1) the actor is a public official, rather than a mere government employee; (2) the conduct was a discretionary act, as opposed to a ministerial act; and (3) the actor performed the conduct while in the scope of his official duties.  See Cherkes, 780 A.2d at 437.  Public official immunity may be defeated by proof of malice.  City of District Heights v. Denny, 719 A.2d 508, 516 (Md. Ct. Spec. App. 1998).

Commissioner Batts is a public official entitled to public official immunity in regard to Count VII.  Plaintiffs seek to hold Commissioner Batts liable for decisions made regarding the

---

[2] Specifically, Plaintiffs admit "that BPD is entitled to immunity as it alleges since there has to date been no waiver of said immunity."  ECF No. 26-1 at 22.  With respect to Count VII, as to which the Police Defendants assert public official immunity, Plaintiffs state that they "reach the same conclusion with regard to Count VII as expressed" regarding sovereign immunity.  Id.

[3] With the exception of Count VII, the Baltimore Police Defendants do not make any argument for the dismissal of the state law claims as to Commissioner Batts.  The Court will therefore discuss Count VII only in regard to the doctrine of public official immunity as to Commissioner Batts.  Thus, to the extent that Counts I-VI rest on state law and are alleged against Commissioner Batts, those claims remain.

training required for officers acting in a supervisory capacity during training exercises.  Generally, actions of police officers taken "within the scope of their law enforcement function are quintessential discretionary acts." <u>Williams v. Prince George's County</u>, 685 A.2d 884, 896 (Md. Ct. Spec. App. 1996).  Decisions regarding training of police officers are a part of the Commissioner's law enforcement function.  <u>See Cherkes</u>, 780 A.2d at 438.  Accordingly, the allegedly negligent conduct asserted in Count VII occurred, with respect to Commissioner Batts, while he was performing discretionary acts. <u>See id.</u>  Because there is no allegation that Commissioner Batts acted with malice in determining training protocol, he is entitled to public official immunity and Count VII, as asserted against him, must be dismissed.

2. **Count VIII – Excessive Force Under 42 U.S.C. § 1983**

Count VIII, which is framed as a claim for excessive force under 42 U.S.C. § 1983, asserts that the Defendants "deprived the Plaintiff of the following clearly established rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution[:] (a) the right to be free from the use of excessive and unreasonable force and seizure; (b) the right to be free from a deprivation of liberty without due process of law; and (c) the right to be free from summary punishment."

8

Compl. ¶ 56.  The Baltimore Police Defendants contend that Count VIII must be dismissed because, to the extent that it alleges a violation of Gray's substantive due process rights, it fails to assert that the Baltimore Police Defendants intentionally injured Gray.  With regard to that portion of Count VIII that claims excessive force or seizure under the Fourth Amendment, the Baltimore Police Defendants contend that because Commissioner Batts was not "personally involved" in the alleged seizure of Raymond Gray, and Plaintiffs cannot establish either a Monell or supervisory liability claim, it must similarly be dismissed.

Generally, courts are "reluctant to expand the concept of substantive due process."  Collins v. Harker Heights, 503 U.S. 115, 125 (1992).  The Supreme Court has stated that, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  Albright v. Oliver, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)) (internal quotation marks omitted).  Thus, if Plaintiffs' constitutional claims are "covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard

appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n.7 (1997). Resort to substantive due process is inappropriate, therefore, unless Plaintiffs' claim is not "covered by" the Fourth Amendment. See County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998).

Here, the Fourth Amendment's prohibition on unreasonable seizures, although covering "the right to be free of seizures effectuated by excessive force," Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011), does not provide an avenue for relief, as pled, against Commissioner Batts and the Baltimore Police Department.[4] A Fourth Amendment seizure occurs where a government actor has, "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). As the Supreme Court has noted, "a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement through means

---

[4] To the extent that Plaintiffs' claims against the Baltimore Police Department in these counts rest on supervisory or Monell liability, those claims are discussed infra.

intentionally applied." Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989) (emphasis in original). Liability under § 1983 will only lie, however, "where it is affirmatively shown that the individual charged acted personally in the deprivation of the plaintiff['s] rights.  The doctrine of respondeat superior has no application under this section." Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (quoting Bennett v. Gravelle, 323 F. Supp. 203, 214 (D. Md. 1971), aff'd, 451 F.2d 1011 (4th Cir. 1971)).  Regardless of how liberally the Court construes the Complaint, no plausible allegation has been made linking either Commissioner Batts or the Baltimore Police Department as an entity directly to the alleged seizure of Gray.

Moreover, to the extent that an inquiry into the Baltimore Police Defendants' alleged deprivation of Gray's substantive due process rights is appropriate, Plaintiffs' claims must still be dismissed.  The Due Process Clause of the Fourteenth Amendment "protects a set of interests – life, liberty, and property – that are also protected by state tort law." Waybright v. Frederick County, 528 F.3d 199, 204 (4th Cir. 2008).  It does not, however, "impose federal duties that are analogous to those traditionally imposed by state tort law," Collins v. City of Harker Heights, 503 U.S. 115, 128-29 (1992), nor "transform every tort committed by a state actor into a constitutional

violation." DeShaney v. Winnebago County Dep't of Social
Servs., 489 U.S. 189, 202 (1989).

Only the "most egregious official conduct can be said to be
arbitrary in the constitutional sense" and thus run afoul of the
substantive due process clause of the Fourteenth Amendment.
County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).  Thus,
the Supreme Court requires executive conduct to be "wrong enough
to register on a due process scale as conduct that 'shocks the
conscience.'"  Waybright, 528 F.3d at 205 (quoting County of
Sacramento, 523 U.S. at 846).  Generally, for a due process
challenge to executive action to succeed, "the action must have
been 'intended to injure in some way unjustifiable by any
government interest.'"  Id. (quoting County of Sacramento, 523
U.S. at 849).  Where harm is negligently inflicted, it is
"categorically beneath the threshold of constitutional due
process."  Id. (quoting County of Sacramento, 523 U.S. at 849).
"And as to 'culpability falling within the middle range,
following from something more than negligence but less than
intentional conduct,' the Court has allowed that it may have
constitutional implications, but only in special circumstances,"
which are to be analyzed with "self-restraint" and "utmost
care."  Id. (quoting County of Sacramento, 523 U.S. at 849;
Collins, 503 U.S. at 125).

Here, Plaintiffs make no allegation that the Baltimore Police Defendants intentionally injured Gray.  Rather, Plaintiffs appear to argue two primary theories in support of application of a lower standard of culpability.  First, Plaintiffs contend that, although not alleged in their Complaint, Gray was in a custodial relationship with the Baltimore Police Department.  Specifically, Plaintiffs argue that Gray's "relationship to Defendants must be classified as an individual, who at the time of deprivation of his liberty, was in the care and custody of the Defendants, with no autonomy or ability to choose not to participate at the Rosewood Facility." ECF No. 26-1 at 11.  The Court finds this implausible.  See generally DeShaney, 489 U.S. 189.  A custodial relationship exists "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself," such as "incarceration, institutionalization, or the like."  Waybright, 528 F.3d at 207 (quoting DeShaney, 489 U.S. at 200; Pinder v. Johnson, 54 F.3d 1169, 1175 (4th Cir. 1995) (en banc)).  The Baltimore Police Department did not confine Gray in such a manner.  See Collins, 503 U.S. at 128 (noting that a city employee in a dangerous workplace who has "voluntarily accepted[] an offer of employment" is not in a custodial relationship).

13

Second, Plaintiffs appear to argue that the Defendants created the danger faced by Gray and thus, that "the absence of a custodial relationship may not be dispositive."  See generally ECF No. 26-1 at 11-12; Waybright, 528 F.3d at 207 (quoting Pinder, 54 F.3d at 1177).  Although Plaintiffs' argument is not clear on this point, Plaintiffs appear to suggest that the training exercise should qualify as a state-created danger because the Baltimore Police Department and its officers directed him as to when and how to participate in the training exercise despite their knowledge of the risk of participation in a "military style" training exercise with live weapons. Plaintiffs assert that because Gray was "instructed to participate" in the training exercise, and "to stand where Defendant training officers told him to stand," he had no "ability to decide whether or not to participate in the day's exercises."  ECF No. 26-1 at 12.  The Baltimore Police Defendants argue that, because Raymond Gray's employment position with the University of Maryland police force required him to complete the training courses through which he suffered injury, he was "in an employment relationship with the training academy."  ECF No. 33 at 10-11.  Accordingly, the Baltimore Police Defendants assert, they cannot be liable for violations of substantive due process absent allegations "that a law enforcement agency (and its officials) specifically intend[ed]

14

to hurt a recruit or a trainee . . . ."  Id. at 11 (emphasis in
original).

The Court agrees with the Baltimore Police Defendants.
Gray was undisputedly in attendance at the training session at
the Rosewood facility pursuant to his employment as a police
trainee for the University of Maryland Police force.  Compl. ¶¶
1, 12; see also ECF No. 26-1 at 12.  Contrary to the assertions
of the Plaintiffs, therefore, he was not in a position where he
was "in the care and custody of the Defendants, with no autonomy
or ability to choose not to participate at the Rosewood
Facility."  See ECF No. 26-1 at 11, 12 ("Plaintiff Gray . . .
lacked the opportunity to opt-out of training exercises.").
Rather, he participated in the training exercise pursuant to a
voluntary choice to obtain employment as a police officer.  As
the Waybright court noted in considering a similar claim with
regard to a training incident, "[s]ometimes practice is
demanding because games are demanding, and training is demanding
because jobs are demanding, and how best to conduct these
sessions can rarely be the focus of a constitutional claim."
528 F.3d at 208.  Although the incident at issue was undoubtedly
tragic, to inject constitutional liability here would run afoul
of the Supreme Court's underlying concern in Collins by placing
"a host of policy choices that must be made by locally elected
representatives" with "federal judges interpreting the basic

charter of Government for the entire country." 503 U.S. at 128.
Thus, to the extent that the Complaint asserts a substantive due
process violation against the Baltimore Police Defendants, it
will be dismissed.

### 3. **Count IX – Deprivation of Federal Rights**

Count IX of Plaintiffs' Complaint, entitled "Plaintiff's
Section 1983 Action (Deprivation of Federal Rights)," asserts
that "[t]he conduct of Defendants caused the Plaintiff to be
deprived of rights, privileges and/or immunities secured by the
Constitution and the laws of this land" and seeks recovery
against the "Defendants who participated in any way in the cover
up of the Plaintiff's Title 42, Section 1983 causes of action."
Compl. at 18-19.  The Baltimore Police Defendants argue for
dismissal of Count IX because it asserts only a violation of §
1983, which is not independently actionable, and fails to allege
a violation of a corresponding federal right.  Plaintiffs, by
contrast, assert that, because Count IX incorporated by
reference prior sections of the Complaint, "the facts and
permissible inferences drawn from the Complaint sufficiently
allege that Defendants obstructed and impeded the due course of
justice" by covering up facts relating to and the identities of
officials present at the time of the shooting.  ECF No. 26-1 at
8.  Plaintiffs claim that Count IX is sufficiently pled because
it specifically identifies the "cover up" of Gray's § 1983

16

claims as actionable conduct.  ECF No. 26-1 at 8-9.  Although
not specifically referenced in the Complaint, Plaintiffs assert
that the Baltimore Police Defendants violated 42 U.S.C. §
1985(2), which prohibits "impeding, hindering, obstructing, or
defeating, in any manner the due course of justice . . . with
intent to deny to any citizen the equal protection of the laws .
. . ."

Although § 1983 provides a statutory vehicle for
vindicating violations of constitutional and statutory rights,
it does not, "[s]tanding alone," provide protection against
violations of civil rights because it "does not provide any
substantive rights at all."  Chapman v. Houston Welfare Rights
Org., 441 U.S. 600, 618 (1979).  Rather, because § 1983 "by
itself does not protect anyone against anything," a claim
brought under § 1983 must assert also the specific right alleged
to be violated.  Id. at 617; see also Gonzaga Univ. v. Doe, 536
U.S. 273, 285 (2002).  To establish a civil conspiracy under §
1983, Plaintiff must allege that the Defendants "acted jointly
in concert and that some overt act was done in furtherance of
the conspiracy which resulted in [Gray's] deprivation of a
constitutional right."  Hinkle v. City of Clarksburg, 81 F.3d
416, 421 (4th Cir. 1996).

Assuming, as Plaintiffs argue, that Count IX could be
construed as asserting a civil conspiracy under § 1983 or 42

U.S.C. § 1985(2), it must still be dismissed.  The Complaint, as formulated, does not state a claim for a civil rights conspiracy.  Plaintiffs do not allege the existence of a specific conspiratorial objective, do not allege any facts supporting the existence of a conspiratorial objective, and do not allege any actions taken in furtherance of that objective.[5] Plaintiffs simply have not provided any facts in support of their contention that the Baltimore Police Defendants – or any defendant, for that matter – took steps to cover up the occurrences on the date in question.  Nowhere in Plaintiffs' Complaint – or, for that matter, in Plaintiffs' Opposition – do Plaintiffs identify, with sufficient specificity, the federal rights forming the basis for their claim.  See, e.g., ECF No. 26-1 at 9-10 (referring to "related provisions [of § 1983] arising from the same body of Federal Civil Rights Acts," and stating that "other Federal law may provide additional statutory bases for Count IX," but identifying specifically only 42 U.S.C. § 1985(b)). As formulated, therefore, Count IX is not

---

[5] To the extent that Plaintiffs' § 1983 claim is separate from the § 1985 claim mentioned in their Opposition, the allegations in Count IX are insufficient to establish either.  Although 42 U.S.C § 1985(2) permits recovery for a conspiracy to "obstruct the due course of justice with intent to deny [Plaintiff] equal protection of the law," Plaintiffs have failed to allege sufficient facts to state a plausible claim for relief.  See Hinkle, 81 F.3d at 421-22 & n.4.

sufficiently specific to put Defendants on notice of the claim
against them and must therefore be dismissed.

### 4. **Count X — Failure to Train**

In Count X, Plaintiffs assert that the Baltimore Police
Department is liable, pursuant to Monell v. Department of Social
Services of the City of New York, 436 U.S. 658 (1978), for
failing to adequately train the Officer Defendants.  The
Baltimore Police Defendants assert that Count X must be
dismissed because it fails to meet pleading standards.
Specifically, the Baltimore Police Defendants claim that
Plaintiffs' complaint "nakedly asserts the elements of § 1983
Monell liability without alleging facts in support of such
assertions."  ECF No. 11-1 at 17 (emphasis in original).
Additionally, the Police Defendants assert that Plaintiffs'
Complaint merely asserts respondeat superior liability, rather
than the existence of an unconstitutional policy, custom, or
practice, as required by Monell.

Municipalities and other local governmental units are
"included among those persons to whom § 1983 applies," and can
therefore be sued directly under § 1983 where the allegedly
unconstitutional action "implements or executes a policy
statement, ordinance, regulation, or decision officially adopted
and promulgated by that body's officers."  Monell, 436 U.S. at
690.  A governmental entity may be held liable under § 1983 if

it, "under color of some official policy, 'causes' an employee to violate another's constitutional rights." Id.

Liability is not imposed vicariously on governmental bodies, however, "solely on the basis of the existence of an employer-employee relationship with a tortfeasor." Id. at 692. Rather, in order to recover against a municipality under Monell, "a plaintiff must establish both a municipal policy or custom and a causal link between such policy or custom and the alleged constitutional injury." Hector v. Weglein, 558 F. Supp. 194, 200 (D. Md. 1982). "[M]unicipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 479, 483 (1986).

Plaintiffs assert that the Baltimore Police Defendants are liable under Monell for failure to train the Officer Defendants with respect to conducting training exercises. Municipalities may be held liable for failure to train under Monell where the "failure to train amounts to deliberate indifference as to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of

its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. at 389.

Plaintiffs appear to assert that the Baltimore Police Department had a policy or custom of using or tolerating the use of live weapons during training exercises. See Compl. ¶ 5. Plaintiffs allege that such shooting training exercises, using live weapons, "were occurring with sufficient regularity so as to constitute a pattern and practice," and that the Baltimore Police Defendants "tolerat[ed], permitt[ed], acquiesc[ed] in, and [did] not properly discipline[e], monitor[] or otherwise curb[] these known abuses and . . . non-compliance with pre-existing procedures and policies regarding training." Id.

The Court must take the factual allegations in the Complaint to be true. Plaintiffs allege that the Baltimore Police Department knew of the use of live ammunition during training exercises and, with that knowledge, did not monitor or make any attempt to curb such abuses of departmental policy. Plaintiffs allege that the Baltimore Police Defendants' failure to do so contributed causally to Gray's injuries at the hands of Officer Kern. Although the allegations contained only in Count X of the Complaint are sparse, viewed in context with the remainder of the Complaint, Plaintiffs have stated a claim for

Monell liability against the Baltimore Police Department
sufficient to survive a Motion to Dismiss.

With respect to Commissioner Batts, Plaintiffs appear to
assert a claim, in Count X, for supervisory liability under 42
U.S.C. § 1983 for failure to train.  Supervisory liability under
42 U.S.C. § 1983 "is not premised upon respondeat superior but
upon 'a recognition that supervisory indifference or tacit
authorization of subordinates' misconduct may be a causative
factor in the constitutional injuries they inflict on those
committed to their care.'"  Shaw v. Stroud, 13 F.3d 791, 798
(4th Cir. 1994) (quoting Slakan v. Porter, 737 F.2d 368, 372-73
(4th Cir. 1984)).  To establish a claim for supervisory
liability against Commissioner Batts, Plaintiffs must allege
"actual or constructive knowledge of a risk of constitutional
injury, deliberate indifference to that risk, and an
'affirmative causal link between the supervisor's inaction and
the particular constitutional injury suffered by the
Plaintiff.'"  Carter, 164 F.3d 215, 221 (4th Cir. 1999) (quoting
Shaw, 13 F.3d at 799).  Although Plaintiffs do not specify the
occurrence of prior training exercise accidents similar to that
at issue in the present case, Plaintiffs allege that
Commissioner Batts knew, through officers conducting training
exercises with close ties to him, of the use of live weapons
during training exercises.  Plaintiffs allege that, despite this

knowledge, Commissioner Batts did not take action to remedy the problem, which led to Gray's injury.  The Court must accept the facts as pled by Plaintiffs to be true.  As a result, Plaintiffs have stated a claim for supervisory liability against Commissioner Batts.

### 5. Count XI – Loss of Consortium

The Baltimore Police Defendants also seek dismissal of Count XI only, apparently, to the extent that it purports to state a substantive due process claim for loss of consortium. Although Plaintiffs admit that "Count XI is simply a joint state claim for loss of consortium," they then attempt, through their Opposition memorandum, to argue the merits of filing for leave to amend to add a substantive due process claim. See ECF No. 26-1 at 13-15.  Courts have repeatedly refused to "recognize a substantive due process claim arising from the deprivation of the love and support of a family member," and the Supreme Court "has never held that the protections of substantive due process extend to claims based on governmental action which affects the family relationship only incidentally." Shaw, 13 F.3d at 805 (citations omitted).  The Court declines to expand the bounds of substantive due process in this case.

### B. **Motion to Dismiss by Mayor and City Council of Baltimore City**

Defendant Mayor and City Council of Baltimore City ("Baltimore City") alleges that it should be dismissed entirely primarily because it does not maintain any direct control over the Baltimore Police Department.  Baltimore City describes Plaintiffs' Complaint as asserting two central theories against the non-individual defendants: (1) "that they have 'vicarious liability for the acts and omissions" of the individual defendants, and (2) "that they are 'directly liable' for failing to provide" training or comply with policy that would have prevented the shooting.  ECF No. 23-1 at 2 (citing Compl. ¶ 18). Because no agency relationship exists between Baltimore City and the Baltimore Police Department, and because Baltimore City lacks legal authority to create policy for the Baltimore Police Department, Baltimore City contends that it cannot be held liable for Gray's shooting.  Plaintiffs, by contrast, contend that "[t]he case law is replete with examples in which the Fourth Circuit and the U.S. District Court for the Northern [Division] of Maryland have found sufficient connection between [Baltimore City] and [the Baltimore Police Department] for liability to exist under 42 U.S.C. § 1983."  ECF No. 28-1 at 8. Although Plaintiffs' Complaint alleges that Baltimore City controls the Baltimore Police Department, "holds hearings on

Police Department policies[,] and sets the Police Department budget," [6] Baltimore City characterizes such allegations as "largely incorrect legal conclusions" that the Court need not accept as true.  See ECF 23-1 at 3 (citing Twombly, 550 U.S. at 570).

As noted infra, municipalities may be held liable under 42 U.S.C. § 1983 where they engage in allegedly unconstitutional action that "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  Monell, 436 U.S. at 690. Baltimore City contends that it cannot be held liable under § 1983 because, as a matter of law, it does not exercise any supervisory authority or control over the Baltimore Police Department, and plays no role in setting Baltimore Police Department policies.  To that end, the Court of Appeals of Maryland has repeatedly held that Baltimore City is not liable in state law tort actions for the actions of the Baltimore Police Department.  See, e.g., Mayor & City Council of Baltimore v. Clark, 944 A.2d 1122, 1128-30 (Md. 2008).  This Court has

---

[6] Plaintiffs attach a portion of the Baltimore City Code and an Executive Order executed by the Mayor of Baltimore City to their Opposition to Baltimore City's Motion to Dismiss in support of their contention that Baltimore City controls the Baltimore Police Department.  Even assuming that consideration of these extraneous documents was appropriate on a Motion to Dismiss, see generally Henthorn v. Department of Navy, 29 F.3d 682, 688 (D.C. Cir. 1994), the documents do not provide support for Plaintiffs' argument.

declined repeatedly to depart from those decisions, determining

instead that Baltimore City cannot be held liable under Monell

for the actions of the Police Department or its officers.  See,

e.g., Bradley v. Baltimore Police Dep't, 887 F. Supp. 2d 642,

647-48 (D. Md. 2012); Chin v. City of Baltimore, 241 F. Supp. 2d

546, 549-50 (D. Md. 2003); Carter v. Mayor & City Council of

Baltimore, 164 F. Supp. 2d 509, 517-18 (D. Md. 2001), vacated on

other grounds by 39 F. App'x 930, 2002 WL 1580679 (4th Cir.

2002).  The Court sees no reason to depart from this analysis

now.[7]  Moreover, Plaintiffs' arguments to the contrary are

unpersuasive.  Thus, to the extent that the claims against

Baltimore City are premised on § 1983 and supervisory liability,

they will be dismissed for failure to state a claim.

　　To the extent that Plaintiffs seek to hold Baltimore City

directly liable, their claims will be similarly dismissed.

Because the City has no authority to control the policy of the

Baltimore Police Department, Plaintiffs' Complaint does not

---

[7] Plaintiffs cite to numerous cases purporting to hold the
opposite.  See, e.g., Humbert v. O'Malley, Civ. No. WDQ-11-0440,
2011 WL 6019689 (D. Md. Nov. 29, 2011); Brown v. Tshamba, Civ.
Action No. RDB-11-00609, 2011 WL 2935037 (D. Md. Jul. 18, 2011);
Mason v. Mayor & City Council of Balt., Civ. Action No. HAR 95-
41, 1995 WL 168037 (D. Md. Mar. 24, 1995). As Judge Bredar noted
recently, however, the line of cases to which Plaintiffs cite
appear to confuse the Monell inquiry with an Eleventh Amendment
immunity analysis.  See Bradley, 887 F. Supp. 2d at 648 n.4
("These three cases may have merged the analysis as to whether a
particular entity should be entitled to Eleventh Amendment
immunity under § 1983 with the analysis as to whether the same
entity can be held liable under Monell.").

contain any plausible allegations that the City is liable for taking, or failing to take, any policy action directly contributing to the incident at issue.  Plaintiffs' Complaint therefore fails to allege any conduct for which Baltimore City would be directly liable.

### C. **Baltimore County's Motion for Summary Judgment**

Defendant Baltimore County filed a Motion for Summary Judgment, ECF No. 24, in response to which Plaintiffs filed a Motion to Stay.  ECF No. 29.  Baltimore County asserts that the Complaint's allegations regarding its liability "are either demonstrably false or legally insufficient,"  ECF No. 24-1 at 6, while Plaintiffs assert that they lack sufficient factual information to respond to Baltimore County's Motion.  ECF No. 29.

In support, Baltimore County attached a letter, dated September 2, 2009, from the Maryland Department of Health and Mental Hygiene authorizing the Baltimore County Tactical Unit to use the Rosewood Facility for training exercises.  ECF No. 24-2 at 2.  Additionally, Baltimore County submitted an affidavit, by Colonel Peter Evans, stating that the only Baltimore County Police personnel to use the Rosewood Facility are the Tactical and K-9 Units, and that of those personnel, only three members of the K-9 Unit were present at the Rosewood Facility at the time of the shooting.  ECF No. 24-3 at ¶¶ 2-3.  Although

Baltimore County homicide detectives were dispatched to the Rosewood Facility following the shooting, they turned the investigation over to the Maryland State Police pursuant to a Memorandum of Understanding between the two agencies.  Id. at ¶ 4; see also ECF No. 24-4 (Memorandum of Understanding).  An affidavit of Officer First Class Christopher Davies, who was one of the three K-9 officers present at the Rosewood Facility on the date in question, states that none of the three officers were near the training session with the City officers or interacted with the City officers.  ECF No. 24-4 at ¶¶ 4-5.  According to Officer Davies's affidavit, the Baltimore County K-9 officers had returned to their precinct prior to the shooting.  Id. at ¶ 6.  Therefore, because Baltimore County's attached documents establish that it did not own the Rosewood Facility and that no officers were present at the time of the shooting, Baltimore County asserts that it is entitled to judgment as a matter of law.

Plaintiffs did not file a response in opposition to Baltimore County's motion, but instead filed a "Motion for Order Deferring the Time to Respond to Defendant, Baltimore County's Rule 56 Motion for Summary Judgment" pursuant to Federal Rule of Civil Procedure 56(d).  ECF No. 29.  Plaintiffs assert that, at this stage in the litigation, they are "unable to present facts essential to justify an opposition" to the Motion for Summary

Judgment as they have not had an opportunity to engage in discovery.  Id. at ¶ 1.

Federal Rule of Civil Procedure 56(d) provides that, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Summary judgment is ordinarily "inappropriate 'where the parties have not had an opportunity for reasonable discovery.'" Hamilton v. Mayor & City Council of Baltimore, 807 F. Supp. 2d 331, 341 (D. Md. 2011) (quoting E.I. du Point de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011)). Summary judgment "must be refused where the nonmoving party has not had the opportunity to discover information that is essential to the opposition."  Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 250 n.5).

To properly raise an objection to a motion for summary judgment under Rule 56(d), "the non-movant must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, 'for specified reasons, it cannot present facts essential to justify its opposition,' without needed discovery."  Id. (quoting Fed. R. Civ. P. 56(d)).  The

non-movant "cannot simply demand discovery for the sake of discovery," but must rather assert discoverable information "essential to [the] opposition." Id. at 342 (quoting Young v. UPS, No DKC-08-2586, 2011 WL 665321, at *20 (D. Md. Feb 14, 2011); Scott v. Nuvell Fin. Servs., LLC, No. JFM-09-3110, 789 F. Supp. 2d 637, 641, 2011 WL 2222307, at *3 (D. Md. June 7, 2011)). Where the "additional evidence sought to be discovered would not create a genuine issue of material fact sufficient to defeat summary judgment," however, denial of a Rule 56(d) motion is appropriate. Id. (quoting Amirmokri v. Abraham, 437 F. Supp. 2d 414, 420 (D. Md. 2006)).

Plaintiffs' unopposed Motion to Defer appears to double as the affidavit or declaration required by Rule 56(d). See ECF No. 29 at 5 ("We, the undersigned, declare under penalty of perjury that the foregoing is true and correct."). Plaintiffs list a variety of facts that they hope to ascertain through the discovery process, including "the true ownership of the property on the date of the occurrence," "the relationship between the Baltimore City and Baltimore County Police Departments with regard to the use of the Rosewood Facility," the occurrence of "joint training sessions and, if so, whether live weapons were used on any of those occurrences," and "whether there were other Baltimore County Police Officers present who were involved in

the shooting who were unknown to the Baltimore County officers" who submitted affidavits.  Id. at ¶ 2.

To the extent that Plaintiffs assert that Baltimore County is directly liable under state law, the motion for summary judgment must be granted.  Under Maryland law, "a county (or municipality) generally enjoys immunity against common law tort liability arising out of acts that are governmental, as opposed to acts that are private or proprietary."  Clark v. Prince George's County, 65 A.3d 785, 790 (Md. Ct. Spec. App. 2013).  "The operation by a county of its police department is quintessentially governmental."  Id. at 791 (citing Wynkoop v. Hagerstown, 150 A. 447, 450 (Md. 1930)).  Accordingly, Baltimore County cannot be sued in its own capacity for common law tort liability, and thus, Baltimore County is entitled to judgment as a matter of law as to Plaintiffs' state law tort claims.  See generally Livesay v. Baltimore County, 862 A.2d 33, 44 (Md. 2004) ("[T]he [Local Government Tort Claims Act] does not waive governmental immunity or otherwise authorize any actions against local governments . . ." (quoting Williams v. Maynard, 754 A.2d 379, 388 (Md. 2000))).  The discovery sought by Plaintiffs would not create a genuine issue of material fact with regard to Baltimore County's immunity.

Although the Court has some doubts regarding Baltimore County's liability as to the remaining counts, summary judgment

is simply not appropriate at this stage in the litigation.[8]

Plaintiffs seek additional information through discovery – which has not yet commenced – that would permit them to ascertain whether Baltimore County's affidavits and supporting documents present a complete picture of the relevant factual circumstances.  The discoverable facts, as framed by the Plaintiffs, if true, may be sufficient to create a genuine issue of material fact making summary judgment inappropriate. Plaintiffs are not, however, presently in a position to determine whether the facts relevant to the motion for summary judgment are undisputed.  Discovery must therefore be permitted to allow Plaintiffs to adequately respond to Baltimore County's motion.

### IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Motion to Dismiss filed by Commissioner Anthony Batts and the Baltimore Police Department will be granted in part and denied in part; the Motion to Dismiss filed by the Mayor and City Council of Baltimore will be granted; the Motion to Dismiss filed by the Baltimore County

---

[8] Baltimore County asserts, in its Opposition, that many of Plaintiffs' allegations are "either demonstrably false or legally insufficient."  ECF No. 24-1 at 6.  Baltimore County has not, however, filed a Motion to Dismiss or otherwise asserted that Plaintiffs' Complaint is insufficiently pled.  Rather, Baltimore County is seeking judgment as a matter of law, which is generally inappropriate where the Court is faced with an incomplete record.

Police Department/Baltimore County will be denied as moot; the

Motion for Summary Judgment filed by Baltimore County will be

granted in part and stayed in part pending discovery; and the

Motion to Stay filed by Plaintiffs will be granted in part and

denied in part.  A separate Order will issue.


                                  _____/s/_____
                                  William M. Nickerson
                                  Senior United States District Judge

DATED: January 7, 2014