**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **RAYMOND GRAY, et al** | * | |
| **Plaintiffs** | * | |
| -v- | * | |
| | | **Civil Action No. 1:13-cv-02270-WMN** |
| **OFFICER WILLIAM SCOTT KERN,** | * | |
| **et al** | | |
| | * | |
| **Defendants** | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF RESPONSE TO DEFENDANTS RUSSELL AND EDWARD'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs, Raymond Gray, by Carolyn Gray, Guardian of the Person and Property of Raymond Gray, and Sheri Gray, by and through their attorneys, A. Dwight Pettit, The Law Office of A. Dwight Pettit and Allan B. Rabineau, pursuant to Federal Rule of Civil Procedure 56, file this Memorandum of Law in Support of Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment as to all counts of Plaintiffs' Complaint, in the above-captioned case.

### *Introduction*

Much as in the Memorandum of Law filed by Co-defendant Kern, Defendants Russell and Edwards lose sight of the purpose of a Motion for Summary Judgment which is not to settle factual disputes.  Also, like Kern, these defendants view the facts only from their own perspective and not in a light most favorable to the non-moving party.

Defendants Edwards and Russell assert in their leading/opening statement that "officer William Kern accidentally shot Mr. Gray during a police training exercise."  This statement is completely contrary to Defendant Edwards' own testimony at his deposition on January 16, 2015

1

wherein at p. 74 at lines 10-19 (Edwards Deposition Transcript, p. 74, lines 10-19 attached as

Exhibit A @ p. 20) he testified that it was his belief that Defendant Officer Kern intentionally

shot the plaintiff.  The basis for this belief was the past history of Defendant Kern's bias as well

as Defendant Kern's failure to accept supervision (Edwards Deposition Transcript, p. 61, lines 2-

19 attached as Exhibit A @ p. 16).  Also relevant was Defendant Edwards' testimony that he

could tell the difference between a Glock 22 and a simunition blind folded which contradicted

Kern's assertion that the shooting was accidental.  (Edwards Deposition Transcript, pp. 20-22

attached as Exhibit A @ pp. 6-7)

### *Facts as to Defendant Edwards*

On February 12, 2013, Defendant Efren Edwards, Sr. was employed by the Baltimore

Police Department and assigned to the education and training division.  On that date, he was a

tactical trainer responsible for simunitions training at the Rosewood Training Facility in

Pikesville, Maryland.  (Trial Transcript 10/16/2013, *State v. Kern,* pp. 33-34, attached as

Exhibit B).  Officer Edwards along with Officer William Scott Kern were conducting the

tactical training with 18 or 19 recruits.

Defendant Kern had never been to the Rosewood Facility before since Defendant

Edwards was responsible for obtaining the facility for training.   (Trial Transcript

10/17/2013, *State v. Kern,* p. 11, lines 11-13, attached as Exhibit C).

When Defendant Kern arrived on February 12, 2013 he observed that it was not a

secure facility like other facilities which he had used for training in the past.  He

observed that there were close to 80 or more rooms inside the facility, and half of those

rooms didn't have electricity or working lights.  The only access to the large building in

which they were conducting the training was one door and that was only accessed by key

2

from the outside.  If the door were to shut, there was no way for anyone to get out and they would have been literally locked in the building.  He further observed that the building was located on a huge campus and that there was a drug rehabilitation center which Defendant Kern didn't like because "you're going to have people with drug problems milling around, going in and out of the facility, and it was in close proximity to where we were doing the training."  (Trial Transcript 10/17/2013, *State v. Kern*, p. 11, attached as Exhibit C).  Defendant Kern advised Defendant Edwards that "I didn't really like this facility and he made the decision at that point that we were going to continue that for this week and we probably weren't going to come back to that facility."   (Trial Transcript 10/17/2013, *State v. Kern*, pp. 9-11, attached as Exhibit D).  Defendant Edwards was the senior officer.  (Kern Deposition Transcript, p. 19, lines 7-10, attached as Exhibit E @ p. 6) and he knew that Defendant Kern had a live weapon on him (Kern Deposition Transcript, p. 34, lines 10-17, attached as Exhibit E @ p. 10)

Defendant Kern and Defendant Edwards discussed the previous day and the day of the occurrence that one of them would have to be armed because of the unsecuredness of the facility.  Unsecuredness included the fact that there was no vision of the only door for ingress and egress which had to be propped open and would allow for people to come in unannounced and hide in one of the rooms.   No one was available to be posted at the door and one could come in unannounced and secrete him or herself in the building.  "It was determined that I [Defendant Kern] would be the one, for the first two days, to remain armed and he would be the one for the second two days to remain armed."  (Trial Transcript 10/17/2013, *State v. Kern*, p. 12, attached as Exhibit F).  Contrary to rules and regulations, Defendant Edwards had been armed during simunitions in the past.  (Trial

Transcript 10/17/2013, *State v. Kern,* p. 42, attached as Exhibit G).  Defendant Kern
acknowledged that he was instructed in training class that he was not to have a live
weapon when operating the simunition.  (Kern Deposition Transcript, p. 15, lines 18 – p.
16, line 2, attached as Exhibit E @ p. 5)

On February 12, 2013, when Defendant Officer Kern was assigned to conduct bunker
training at the Rosewood facility in Baltimore County, Maryland, Plaintiff Raymond Gray was
one of Defendant Kern's trainees. However, at the time he was shot in the head by Defendant
Kern, Officer Gray was standing in a hallway awaiting his turn to participate in the actual
training session. Mr. Gray was outside of the area where the bunker training was actually
occurring.  (Edwards Deposition Transcript, p. 44, lines 8-11, attached as Exhibit A @ p. 12).

The bunker training for which Defendant Kern was assigned to serve as an instructor had
written sources providing rules and regulations prohibiting live weapons in the training area
where bunker training was being conducted using simunitions. These regulations are referred to
in the various attached Exhibits, as follows:

1) The course schedule. Edwards Deposition Transcript, p. 12, lines 3-
   8 (attached as Exhibit A @ p. 4);
2) Certification training requirements through MPTA in Sikesville,
   Maryland, a simunitions manual and an instructors course,
   Edwards Deposition Transcript, p. 12, lines 9-14 (attached as Exhibit
   A @ p. 4),
3) Rules and regulations prohibiting a live weapon in the area where the
   simunitions training was going on, Edwards Deposition
   Transcript, p. 13, lines 18-21; p. 14, lines 12-17 (attached as Exhibit
   A @ pp. 4-5); and,
4) Lesson plans implemented at education and training. Edwards
   Deposition Transcript, pg. 10, lines 1-21 (attached as Exhibit A @ p. 4).

Officer Edwards, who had experience training new recruits[1] and SWAT officers in
bunker training, was very familiar with the rules and regulations regarding bunker training and

---

[1] These training classes were not restricted to Baltimore City Police Officers but included new

the rules and regulations prohibiting live weapons in the area where simunitions training was being conducted. These rules and regulations were applicable to bunker training.  (Edwards Deposition Transcript, p. 13, lines 2-17 and  p. 14, lines 8-17, attached as Exhibit A @ pp. 4-5).

During the afternoon exercise with other trainees the Plaintiff, Officer Raymond Gray, was standing in a hallway outside of the gymnasium where the exercise was taking place. (Edwards Deposition Transcript, p. 44, lines 2-17, attached as Exhibit A @ p. 12). Officer Gray stood near a window in a door waiting for his next exercise. *Id*.  Defendant Kern testified at his criminal trial that he could see Plaintiff Gray and the other recruits who were waiting to participate in the training walking back and forth in front of a door with a window.  (Trial Transcript 10/17/2013, *State v. Kern,* p. 30, lines 12-16, attached as Exhibit H).

Officer Edwards, emphatically stated at his deposition that "any training that we are using simunition weapons, I was taught years ago, and it's also in [their] SOP and also simunitions manuscript, that when using simunition rounds, you should not or you will not have any live ammunition within the training corridor." (Edwards Deposition Transcript, p. 23 lines 18-21; p. 24, lines 1-2, attached as Exhibit A @ p. 7).   Having a live weapon in simunitions training was against the rules (Edwards Deposition Transcript, pp. 14-15, attached as Exhibit A @ p. 5)

Prior to this shooting, Defendant Kern was the type of instructor who refused to follow directions. He was reprimanded on several occasions by several supervisors while being an instructor at education and training. He was recommended to be removed from education and training. He verbally stated that he did not like his sergeant and that he did not like President Obama, being a black president. He verbally, constantly and consistently, showed dislike to a

---

recruits from different law enforcement agencies as well; such as the University of Maryland Campus Police.  The plaintiff was a University of Maryland Campus Police Trainee.

particular group of trainees, particular African American males, with each one of the classes that he instructed. He was brought up on an EEOC Complaint by a supervisor, Nikki Bennett. (Edwards Deposition Transcript, p. 61, lines 2-19, attached as Exhibit A @ p. 16).  Kern was racially biased against African Americans[2]. (*Id*., at p.. 62, lines 6-8, attached as Exhibit A @ p. 17).  Documentation of complaints regarding Defendant Kern's abuse to African Americans and an EEOC complaint is in the possession of Baltimore Police Department Internal Investigations. (Edwards Deposition Transcript, p. 64, lines 12-20, attached as Exhibit A @ p. 17).  Defendant Edwards believed Defendant Kern intentionally shot Officer Gray with his service weapon. (Edwards Deposition Transcript, p. 74, lines 10-19, attached as Exhibit A @ p. 20).[3]

Defendant Edwards stated that someone in firearms could tell the difference between a simunitions weapon and a Glock .22 (a live service weapon) even blindfolded (Edwards Deposition Transcript, pp. 20-22, attached as Exhibit A @ pp. 6-7).

Defendant Kern was so concerned with the use of the Rosewood facility that he went to the "entire academy staff" and asked if anybody could assist Defendant Kern and Defendant Edwards in the training exercise.  (Trial Transcript 10/17/2013, *State v. Kern,* p. 22 attached as Exhibit I).

### *Facts as to Defendant Russell*

At the time of the Raymond Gray shooting, Defendant Major Eric L. Russell, Sr. was the director of education and training for the Baltimore City Police Department. (Russell Deposition Transcript, p. 6, line 20 – p. 7, line 3, attached as Exhibit J @ p. 3). Prior to the time of the shooting, Defendant Russell had never been to the Rosewood facility.  (Russell Deposition Transcript, p. 8, lines 13-15 attached as Exhibit J @ p. 3).

---

[2] Defendant Kern is Caucasian; Officer Gray is African American.
[3] A Motion to Compel Response to Subpoena Duces Tecum has been filed to secure said documents.

He himself had no knowledge of the arrangements whereby trainees from other police units such as the Plaintiff are trained by the Baltimore City Police Department.  (Russell Deposition Transcript, p. 10, lines 3-10 attached as Exhibit J @ p. 4).   He had no knowledge of the type of training at the Rosewood Facility on February 12, 2013. (Russell Deposition Transcript, p. 13, lines 17-21 attached as Exhibit J @ p. 4).  He later became aware that the training being conducted on that date was bunker training which is "in layman's terms, basically trained to use a shield to be provided between you and an individual or a situation."  (Russell Deposition Transcript, p. 14, lines 5-8 as Exhibit J @ p. 5).   However, he did not know whether or not there was a manual which provided for the training.  (Russell Deposition Transcript, p. 14, lines 18- 20 attached as Exhibit J @ p. 5).    Defendant Russell indicated that he did not know what training a trainer such as Co-Defendants Kern or Edwards would have to have with regard to bunker training. (Russell Deposition Transcript, p. 16, line 14 – p. 17, line 10 attached as Exhibit J @ p. 5).  One of the admitted responsibilities of Defendant Russell in his position was "reviewing and evaluating policies and program delivery and ensure its compliance with established criteria."  (Russell Deposition Transcript, p. 18, line 19 – p. 19, line 5 and Deposition Exhibit Number 1 attached as Exhibit J @ p. 6 and Exhibit J @ p. 12, respectively).[4]  Defendant Russell indicated that he was familiar with the simunition that is used in bunker training and with regard to the rules and regulations with regard to having a live weapon in a training area; namely, "[t]here's not to be one."  (Russell Deposition Transcript, p. 22, lines 1–11 attached as Exhibit J @ p. 7).  Although he was familiar with the simunition used in bunker training, Defendant Russell had never

---

[4] See also attached Exhibit J @ p. 12 which was provided in response to Interrogatories setting forth in more detail Defendant Russell's duties at the time of the occurrence.

handled one of them.  (Russell Deposition Transcript, p. 25, lines 3-5 attached as Exhibit J @ p. 7).

### *Standard of Review*

Fed. R. Civ. P. 56(a) reads in pertinent part: "A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law..."

The existence of an issue of material fact to entitle the non-moving party to be able to proceed onward to trial is not required to be resolved conclusively in favor of that party. All that is required is that sufficient evidence supporting the claimed factual dispute be present to require a jury or judge to resolve the differing versions of the truth at trial. *First National  Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288-289 (1968).  On ruling whether or not to grant summary judgment, the inferences to be drawn from the underlying facts contained in the moving party's materials are to be viewed in a light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The Court must accept all of the non-moving party's properly supported fact assertions as true and give the benefit of all reasonable inferences that can be drawn from the record before it and determination of credibility shall always be left to the jury.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

Moreover, the court may not make credibility determinations on summary judgment. Black &. Decker Corp. v. United States, 436 F.3d 431, 442 (4th Cir. 2006); Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002).

"Generally, in the face of conflicting evidence, such as competing affidavits, summary judgment is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility." *Vance v. Shearin*, No. No. ELH-14-272. (Dist. Court, D. Maryland 2015) (citing *Boone v. Stallings*, 583 Fed. App'x. 174, (4th Cir. Sept. 11, 2014) (per curiam). To defeat summary judgment, conflicting evidence must give rise to a genuine dispute of material fact. See *Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248. "In assessing the credibility of an officer's account of the circumstances that prompted the use of force, a factfinder may consider, along with other factors, evidence that the officer may have harbored ill-will toward the citizen." *Scott v. United States*, 436 U.S. 128, 139, n. 13, 98 S.Ct. 1717, 1724, n. 13, 56 L.Ed.2d 168 (1978). Accordingly, it is the prerogative of a jury to determine the weight of evidence and credibility of each witness.

When the evidence is viewed as it should properly be viewed on ruling on a Motion for Summary Judgment, the facts as set forth above reveal that although there is a conflict regarding the conduct of Defendant Kern, Defendant Edwards and Defendant Russell, this conflict is for the trier of fact to decide.

### *Argument*

The cornerstone of Defendants Edwards and Russell's argument for summary judgment being granted in their favor on the tort claims is that the one commonality in all of Plaintiffs' tort claims is the concept of "intent," and since this was an accidental shooting of the Plaintiff by Defendant Kern, Defendants argue that there should be no liability. This argument is short-sighted.

It is highly doubtful that a jury could find in this case that Defendant Kern did <u>not</u> shoot Plaintiff Gray since the physical evidence, the admissions of all Defendants as well as all eye witnesses confirm this fact. On the other hand, despite Defendant Kern's assertion that the shooting was an accident, a jury could find that the shooting was no accident at all, but a deliberate, intentional act. This is because Defendant Kern's assertion of an accidental shooting as opposed to the shooting itself is based on Defendant Kern's credibility. It is for the trier of fact alone to determine the credibility of Defendant Kern, and not as a matter of law in a summary judgment proceeding. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)

In fact, at least one of the co-defendants, Officer Edwards, believed no such thing. He testified at his deposition that he believed the shooting was intentional. (Edwards Deposition Transcript, p. 60, lines 3-21, attached as Exhibit A @ p. 16). Once this argument of "accidental shooting" is viewed for what it is – an attempt to have this court decide a dispute of fact, i.e., credibility – the rest of the co-defendants Edwards and Russell's attack on the respective Counts crumbles like a house of cards.

Further, Plaintiffs' claims are not deficient on their face as to Defendant Russell since, as a person with decision making authority, he is liable to Plaintiffs for the actions of subordinates through the principle of supervisory liability. Further, liability may be imputed for gross negligence and negligence, requiring an intentional act or failure to perform a manifest duty, may be established by showing a deliberate indifference to ones duties in the face of obvious lawlessness of one's subordinates. Such deliberate indifference is reflected in the record here as no reasonable officer could have believed Russell's tacit approval of Kern's bigoted, racist and violent conduct towards pervious African American trainees who came before Plaintiff Gray was lawful under clearly established law. *Shaw v. Stroud*, 13 F. 3d 791, 797 (4th Cir. 1994). The

parties do not dispute that Defendant Kern's actions were within the scope and in furtherance of the Education and Training Department of the Baltimore Police Department which Defendant Major Russell headed.  Furthermore, the harm suffered by Plaintiff Gray was or should have been foreseeable to Defendant Russell, given the numerous complaints of Defendant Kern's abuse to African American trainees, Kern's hatred for African American men and the call for Defendant Kern's removal from the Education and Training Department.

I.   ***Defendant Edwards and Russell are Not Entitled to Summary Judgment on Count 1 (False Imprisonment), Count 2 (Battery), Count 4 (Assault), and Count 11 (Intentional Infliction of Emotional Distress)***

Defendants Edwards and Russell cite the case of *Okwa v. Harper,* 360 Md. (2000) and *Janelsins v. Button,* 102 Md. App. 30 (1994) for the proposition that the torts of false imprisonment, battery, assault and intentional infliction of emotional distress are intentional torts.  This statement of law in unassailable.  However, the Statement of Facts sets forth sufficient facts to establish that there is a genuine question of fact as to whether or not Defendant Kern's actions were intentional.  Also as was argued in Plaintiffs' Memorandum of Law In Support of Response in Opposition to Defendant Kern's Motion for Summary Judgment, the consequences of Kern's actions were intended. Every aspect of this shooting for which Kern had direct control produced the consequences he sought. Defendant Kern carried a loaded service weapon and lied on multiple occasions about the same in order to keep this weapon despite knowledge of its prohibition. Defendant Kern participated as a *bunker* trainer while carrying his loaded service weapon despite being reminded of the requirement to "check his weapon."  Defendant Kern withdrew his service weapon from its holster, after pausing from bunker training and moving his attention to Plaintiff Gray, who was not a part of Defendant Kern's current training session, but was standing outside of Kern's room just on the other side

of a glass window. Defendant took aim with his loaded service weapon at Plaintiff Gray's head as the plaintiff peered through the glass window. Defendant Kern pointed his loaded weapon at Plaintiff Gray's head, pulled the trigger of his loaded service weapon and shot Plaintiff Gray in the head.

Defendants Edwards and Russell go on to argue that neither ever seized, applied force or injured Mr. Gray (Memorandum in Support of Defendants Officer Effren Edwards and Major Russell's Motion for Summary Judgment, p. 5, ¶1, ECF Doc. 86-1).

The latter argument ignores the fact that Maryland has expressly recognized aider and abettor tort liability. *Alleco v. Weinberg Foundation,* 340 Md. 176, 199 (1995), 665 A.2d 1038, citing the case of *Duke v. Feldman*, 245 Md. 454, 457, 226.A.d 345, 347 (1967). The *Duke* Court held in that case, which was a tort action against an alleged aider and abettor in the commission of a battery:

> A person may be held liable as a principal for assault and battery if he, by any means (words, signs, or motions) encouraged, incited, aided or abetted the act of the direct perpetrator of the tort.

There is ample evidence in the present case that Defendant Edwards' actions would rise to the level of an aider and abettor in that there was:

1.      an intentional choice of the facility with its questionable security;

2.      an agreement entered into with the shooter, Defendant Kern, to allow use of live weapons contrary to known rules and regulations prohibiting same and a pattern of conduct on the part of Edwards himself which facilitated the prohibited conduct (Trial Transcript 10/17/2013, *State v. Kern,* p. 42, attached as Exhibit G);

3.      an acquiescence in allowing Defendant Kern, who was known not to follow directions, to have a prohibited weapon in his simunition training program when it was known

that Defendant Kern (who is white) had expressed hatred towards African Americans (Plaintiff is African American), and, in the opinion of some, Kern was unqualified to serve in the position of an instructor in view of the above.

Under the totality of the circumstances, the events which culminated in Plaintiff's injuries were foreseeable.  (Edwards Deposition Transcript, p. 60 – p. 65, line 1, attached as Exhibit A @ pp. 16-17)

II.   ***Defendants Edwards and Russell are Not Entitled to Summary Judgment on Count 7 (§ 1983/Excessive Force), Count 9 (§ 1983/Deprivation of Federal Rights), and Count 2 (Violation of the Maryland Declaration of Rights)***

Defendants Edwards and Russell argue in Section IIA, (pages 4-5) of their Memorandum in Support of Defendants Officer Edwards and Major Eric Russell's Motion for Summary Judgment that "a violation of the Fourteenth Amendment requires an intentional acquisition of physical control, i.e., a seizure."  *Brower v. County of Inyo,* 489 U.S. 593, 596 (1989).   The present case would meet such a requirement under the *Brower, supra,* holding.  The Supreme Court in *Brower, supra,* referred to their prior holding in *Tennessee v. Garner,* 471 U.S. 1 (1985).  In that case the Court held that a police officer's fatal shooting of a fleeing suspect constituted a Fourth Amendment "seizure." They pointed out that "[w]e reasoned that '[w]henever an officer restrains the freedom of a person to walk away, he has seized that person.  *Id* at 471 U.S. 7.'"  The Court in *Brower* went on to reverse the lower court and held that the complaint containing an allegation that "under color of law, [the respondent] sought to stop Brower by means of a road block, and succeeding in doing so ... [was] enough to constitute a 'seizure' within the meaning of the Fourth Amendment."  *Brower, supra,* at 599.

Plaintiffs would take this opportunity to correct a misstatement contained at p. 16 in Plaintiffs' Memorandum of Law in Support of Response in Opposition to Defendant Kern's Motion for Summary Judgment (ECF Doc. 79-1) in discussing a similar claim by Defendant Kern.  At the top of p. 16, Plaintiffs state in paragraph 1:

> "In *Brower*, *Supra*, the court was faced with a factual situation in which a suspect who was the intended object of a physical restraint by the police was killed as a result of his vehicle being brought to a stop when it crashed into a police roadblock resulting from a high speed chase.  The Court found the police action was not willful but was an unknowing act, and therefore no Fourth Amendment seizure took place. *Brower*, 489 U.S. at 597."

This was a misstatement of the holding in *Brower, supra.*  The quoted portion above was the holding of the lower court (Court of Appeals for the Fifth Circuit) not the Supreme Court which reversed the lower court and held that there was a seizure.

Summary Judgment should be denied as to Defendants Edwards and Russell not only as aider and abettors but also by application of the principal of supervisory liability.  Supervisory liability is distinguishable from *respondeat superior* which is quite different.  Supervisory liability is a well established principal under which supervisory officials may be held liable for constitutional violations resulting in injuries as a result of conduct by their subordinates.  *Slakan v. Porter,* 737 F.2d 368 (4th Cir. 1984), *cert. denied* 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985).  In *Shaw v. Stroud*, 13 F.3d 791, 798 (1984) the Court reviewed its earlier decision in *Slakan v. Porter, supra*, thusly*:*

> "In Slakan we reasoned that liability is not premised upon respondeat superior but upon 'a recognition that supervisory indifference or tacit authorization of subordinates misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"

and the Court further stated that:

> "Recognizing that supervisory liability can extend 'to the highest levels

of state government,' we have noted that liability ultimately is determined 'by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.' *Slakan,* 737 F.2d at 376.  See *Spell v. McDaniel,* 591 F.Supp. 1090, 1109-10 (E.D.N.C. 1984)(determining issue on supervisory liability is whether defendant proximately caused a violation of the plaintiff's rights by doing something or failing to do something he should have done).  We have also noted that this issue is ordinarily one of fact, not law, Id.  See *Avery v. County of Burke,* 660 F.2d 111, 114 (4th Cir. 1981)"

*Shaw, supra* at 798.

With respect to Defendant Edwards, there is sufficient testimony to raise a genuine issue of whether his indifference to the misconduct of Defendant Kern was a causative factor in the constitutional injuries sustained by the plaintiff.

With respect to Defendant Russell, his duties set forth previously certainly establish that in his position he knew or should have known of the complaints regarding Defendant Kern and failed to exercise sufficient control within his defined duties to prevent Defendant Kern from continuing in his position as an instructor.  Also in failing to stop the continuing violation of rules and regulations by instructors in having live weapons in simunition training.

Those arguments set forth above regarding Section 1983 claims would be pertinent as well to the Maryland Declaration of Rights Article 24 and 26 arguments of Defendants.

### III.   *Defendants Edwards and Russell are Not Entitled to Summary Judgment on Count 7 (Negligence)*

In their argument with respect to Count 7, Defendants Edwards and Russell once again argue that they exercised no personal acts with regard to the shooting of the plaintiff, Raymond Gray.  For reasons previously expressed, one must view the actions initially of Defendant Kern to determine whether or not malice on his part would be enough to defeat immunity which the defendants now claim.  This same argument was

raised in Defendant Kern's Memorandum in support of his Motion for Summary

Judgment and was dealt with in the following manner:

The Exhibits in this case reveal that Defendant Kern acted with malice in carrying his

loaded service weapon in training, lying about possessing the weapon when reminded to remove

it and aiming and shooting Officer Gray in the head.  Furthermore, sufficient evidence exists to

demonstrate Defendant Kern was the type of instructor who refused to follow directions.  He was

reprimanded on several occasions by several supervisors while being an instructor at education

and training. He was recommended to be removed from education and training. He verbally

stated that he did not like his sergeant and that he did not like President Obama, being a black

president. He verbally, constantly and consistently, showed dislike to a particular group of

trainees, particular African American males, with each one of the classes that he instructed. He

was brought up on an EEOC Complaint by a supervisor, Nikki Bennett. (Edwards Deposition

Transcript, p. 61, lines 2-19, attached as Exhibit A @ p. 16).  Kern was racially biased against

African Americans.  (*Id*., at p.. 62, lines 6-8, attached as Exhibit A @ p. 17).

The Court of Appeals in *James v. Prince George's County,* held that:

> Before a governmental representative in this State is relieved of liability for his
> negligent acts, it must be determined that the following independent factors
> simultaneously exist: (1) the individual actor, whose alleged conduct is at issue, is
> a public official rather than a mere government employee or agent; and (2) his
> tortious conduct occurred while he was performing discretionary, as opposed to
> ministerial, acts in furtherance of his official duties [citations omitted]. Once it is
> established that the individual is a public official and the tort was committed
> while performing a duty which involves the exercise of discretion, a qualified
> immunity attaches; namely, in the absence of malice (emphasis supplied), the
> individual involved is free from liability.

288 Md. 315, 323 (1980). Therefore, qualified immunity is not applicable in this case since there

is evidence viewed in a light most favorable to the non-movant that Defendant Kern acted with

malice. Defendant's argument "a," that Defendant Kern is a public official and "b," Defendant Kern's actions at the training session are ministerial, are irrelevant.

Turning to Defendant's argument "c," to determine if malice has been established in the context of immunity, the courts have held that actual malice is required. *See Thomas v. City of Annapolis,* 113 Md. App. 440, 453 (1997), quoting *Carder v. Steiner,* 225 Md. 271, 276 (1961). "This court, when holding public official immunity to be applicable, has defined malice as 'actual malice." *Thomas,* 113 Md. App. at 455, citing *Leese v. Baltimore County,* 64 Md. App. 442, 47981 (1985). A malicious act is one "done knowingly and deliberately, for an improper motive and without legal justification." *Elliott,* 58 Md. at 526. To establish actual malice, it is necessary that the plaintiff establish that the defendant's action was with "an evil or rancorous motive influenced by hate." *Port Deposit v. Petetit,* 113 Md. App. 401, 416 (1997); *see also Thomas,* 113 Md. App. at 455.

Here, the supporting evidence is ripe with examples that Defendant Kern's conduct was knowing and deliberate. His attempt to conceal his continued wrongdoing in carrying his loaded service weapon into bunker training and lying to Officer Edwards when ordered to conduct a *weapons check*[5], reveals his conduct was without legal justification and improper.

Additionally, contrary to Defendant Kern's arguments, Kern's conduct prior to and immediately after shooting Plaintiff Gray in the head indicates evil motive and rancorous intent. The sworn testimony contained in exhibits attached hereto reflect that Kern was asked several times throughout the day of training whether he already conducted a weapons check. He at every point lied to his fellow officer and responded in the affirmative. Further when asked, "'what the

---

[5] Defendant Kern was ordered to conduct a weapons check multiple times throughout the day including both before and after lunch.

fuck were you doing with a gun in the building?' He then replied, 'That's not important right now.'" (Edwards Deposition Transcript, p. 42, lines 67, attached as Exhibit A @ p. 12).   When Officer Edwards attempted to take Kern's still loaded weapon from him after Kern shot Plaintiff Gray in the head, Kern refused several times to give his weapon to Edwards.  (Edwards Deposition Transcript, p. 42, lines 16-17, attached as Exhibit A @ p. 12).

Officer Kern's actions in the present case are consistent with having a reckless disregard for the safety of others as well as a disregard of the rules and regulations that he should have observed.  Furthermore, there is evidence that the shooting was intentional.

Officer Kern's assertion that he carried his loaded service weapon that day out of an obligation to ensure the safety of himself and others, during a training exercise, established the existence of a *special relationship* with Plaintiff Gray as contemplated under *Rodriguez, et al. v. State of Maryland,* 218 Md. App. 573; 98 A.3d 376 (2014) (holding that Common law immunity did not apply because there was a special relationship between the officer and both the decedent and the murderer). (Kern Deposition Transcript, p. 24, lines 17-18 wherein he testified "you are responsible for the people that you train.") (Attached as Exhibit E @ p. 7).  Also Defendants Edwards and Russell would share in the same special relationship status.

Kern would, therefore, not be entitled to qualified immunity if for this reason alone.

"In the presence of a special relationship, liability may lie, and public official immunity may not survive ... A limitation to a police officer's defense of public official immunity occurs when, under the circumstances, a special relationship exists between the officer and the injured person which creates a duty on the part of the officer to protect the victim." See *Rodriguez,* 218 Md.App. 573, 405-407 (2014)

Under the present circumstances Officer Kern is not entitled to qualified immunity and summary judgment on Plaintiffs' claim of negligence should be denied.

Therefore, Defendant Edwards would be equally liable as an aider and abettor, under supervisory liability and/or as one having a special relationship in his trainer/trainee status for reasons previously discussed.

Also, Defendant Russell would be liable under the supervisory liability for his seeming indifference to abuses by officers under his command.

### IV.     *Defendants Edwards and Russell are Not Entitled to Summary Judgment on Count 6 (Gross Negligence)*

Officers Edwards and Russell are not entitled to summary judgment on Plaintiff's claim for Gross Negligence as the attached sworn exhibits are replete with evidence of Kern's malicious and intentional conduct.  Although highly disputed, there is evidence that Officer Edwards, with full knowledge of facts previously discussed, permitted Officer Kern to exercise prohibited conduct, i.e., the retention of his loaded service revolver.  With respect to Defendant Russell, his conduct rises to gross negligence in that although his duties clearly set forth the fact that he should have had knowledge and exercised control over the training exercise and the personnel conducting said exercise, he, by his own admission, had absolutely no personal knowledge of same. (See attached Exhibit J @ p. 12)

Gross negligence has been defined, "as something *more* than simple negligence, and likely more akin to reckless conduct." *Taylor v. Harford County Dep't of Soc. Servs.,* 384 Md. 213,229 (2004) (emphasis in original). Gross negligence is:

> an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.

*Liscombe v. Potomac Edison Co.,* 303 Md. 619, 635 (1985); *Romanesk v. Rose,* 248 Md. 420, 423 (1968); *see also Shoemaker v. Smith,* 353 Md. 143, 164 (1999) (noting in dicta that gross negligence embodies "reckless or wanton conduct"); *see also Rodriguez v. State,* 218 Md. App. 573 , 598 (2014)(finding that a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist. Whether or not gross negligence exists necessarily depends on the facts and circumstances in each case. It is usually a question for the jury and is a question of law only when reasonable men could not differ as to the rational conclusion to be reached).

In *Rodriguez,* the court found that gross negligence may be described as occurring when the actor is so utterly indifferent to the rights of others that he acts as if such rights did not exist or acts with a thoughtless disregard of the consequences without the exertion of any effort to avoid them.

Kern's conduct was a reckless disregard for the safety of Officer Gray for reasons previously stated. Additionally, there is further evidence that his actions were deliberate in the manner he prepared to fire his weapon, i.e., he aimed the weapon and held it with two hands. (Testimony of Eva Tonin, Trial Transcript, *State v. Kern*, October 16, 2013, p. 128, attached as Exhibit K).

Defendant Kern's attempt to soften his conduct by asserting that a simunition round is not dangerous is nonsense as all trainees were required to wear protective gear when participating in training sessions involving a simunition weapon on account of the dangerous nature of the simunition weapon.  (Edwards Deposition Transcript, pp. 47-48, attached as Exhibit A @ p. 13)

It is uncontradicted that Defendant Kern continued to carry his live service weapon during the training exercise.  This action constituted reckless disregard for the consequences which could affect others (possibly with the purpose of intentionally injuring Plaintiff Gray).  (Edwards Deposition Transcript p. 23, lines 18-21; p. 24, lines 1-2; p. 25, lines 3-7; p. 26, lines 15-20, attached as Exhibit A @ pp. 7-8).  Further, the attached sworn testimony reflects that "when asked whether he [Kern] ever indicated to you why he was firing in the direction where Gray was," Edwards responded, "[a]t the time, no. I didn't understand or was made mention as to why he did it until the actual court date. The day of the incident, when I asked him, Officer Kern refused to say anything to me."  (Edwards Deposition Transcript, p. 41, line 17 through p. 42, line 2, attached as Exhibit A @ pp. 11-12).  Further, shooting at Plaintiff Gray's head is contrary to rules and regulations of bunker training.  (Edwards Deposition Transcript, p. 47, lines 1-16, attached as Exhibit A @ p. 13).

Plaintiffs have produced evidence sufficient to show Officer Kern inflicted injury intentionally or was so utterly indifferent to the rights of the Plaintiff that he acted as if such rights did not exist.  As such, Defendants Edwards and Russell are not entitled to judgment as a matter of law on the count of Gross Negligence.

The Motion should be denied as to Count 6 as to Defendants Edwards and Russell for reasons previously expressed.

**V.     _Defendants Edwards and Russell are Not Entitled to Summary Judgment on Count 11 (Loss of Consortium)_**

The loss of consortium, as used in the cases in Maryland and elsewhere means the loss of society, affection, assistance and conjugal fellowship.  It includes the loss or impairment of sexual relations.  *Deems v. Western Maryland Railway Co., et al,* 247 Md. 95, 99, 231 A.2d 514 (1967).

Testimony presented at the trial of *State v. William Scott Kern,* October 16, 2013, p. 23 (attached as Exhibit L) by Mrs. Carolyn Gray, mother of the plaintiff, Raymond Gray, revealed that on the date of the trial, eight months after the shooting, Mr. Gray was still confined to a rehabilitation facility located out of State.

### <u>*Conclusion*</u>

For the reasons advanced above, Defendants Edwards and Russell's request for Summary Judgment should be denied.

Respectfully Submitted,

_____*/s/*_____
A. Dwight Pettit, Bar ID 01697
Law Offices of A. Dwight Pettit, P.A.
3606 Liberty Heights Avenue
Baltimore, MD  21201
(410) 542-5400
adpettit@adwightpettit.com

_____*/s/*_____
Allan B. Rabineau, Bar ID 01636
401 East Pratt Street, Suite 2252
Baltimore, MD  21202
(410) 837-9150
allanbra@verizon.net

Attorneys for Plaintiffs